FREEMAN *v.* GRAND TRUNK WESTERN RAILROAD COMPANY

[No. 17,129. Filed November 22, 1943. Rehearing Denied December 2, 1943. Transfer Denied January 21, 1944.]

*Tinkham & Tinkham,* of Hammond (*Aaron H. Huguenard,* of South Bend, and *Ruben W. Whitesell,* of Plymouth, of counsel) for appellant.

*Parker, Crabill, Crumpacker, May, Carlisle & Beamer* of South Bend, for appellee.

FLANAGAN, J.—This is an action brought by Mary J. Freeman, as administratrix of the estate of her deceased husband, Fred Freeman, on behalf of herself as wife, and three minor children, for damages for the alleged wrongful death of Fred Freeman, which occurred on March 11, 1940, at the intersection of Olive Street and the railroad tracks of appellee, Grand Trunk Western Railroad Company, in the City of South Bend, Indiana. A fast freight being operated by appellee across Olive Street struck the truck which Freeman was driving, causing injuries to him from which death immediately resulted.

The complaint is predicated upon negligence of the appellee in operating its train at a high and excessive rate of speed, to-wit: 50 miles per hour, in violation of a city ordinance of the City of South Bend. Appellee's answer denies that its train was operated in a negligent manner and charges the decedent with contributory negligence.

Trial to a jury resulted in a verdict for appellee. The sole assignment of errors is that the court erred

in overruling appellant's motion for a new trial. The specifications of the motion for a new trial are, (1) Error in giving appellee's tendered instruction numbered 15, and (2) misconduct of counsel for appellee.

1. Appellee's tendered instruction numbered 15 reads as follows:

"It is provided by Statute in the State of Indiana that whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty feet, but not less than ten feet from the nearest track of such railroad, and shall not proceed until he can do so safely, when:

'(a) A clearly visible electric or mechanical signal device gives warning of an immediate approach of a train.

'(c) A railroad train is approaching within approximately fifteen hundred feet of a highway crossing and emits a signal audible for such distance, and such train by reason of its speed or nearness to such crossing is an immediate hazard.

'(d) An approaching train is plainly visible and is in hazardous proximity to such crossing.'

"As applied to this case, if you find it to be a fact from the evidence that there was a clearly visible electric or mechanical signal device at the crossing where the injuries to Fred Freeman occurred that was emitting a warning of the immediate approach of a train, then it was the duty of Freeman to stop his truck within fifty feet of the crossing, but not less than ten feet from the nearest track of the defendant's railroad, and it was his duty to not proceed until he could do so safely.

"And if you should find from the evidence in this case that when the defendant's train was within approximately 1,500 feet of the crossing where the collision with the truck driver, Fred Freeman, occurred emitted a signal by whistle or otherwise that was audible at the crossing where the collision occurred, and that the train, by reason of its speed or nearness to the crossing was an imme-

diate hazard to the safety of Fred Freeman, should he attempt to cross in front of the train, then it was his duty to stop his truck within fifty feet, but not less than ten feet of the nearest track of the railroad and to not proceed across the track until he could do so safely.

"If you should further find from the evidence that the defendant's train was in a hazardous proximity to the crossing, then it was the duty of Fred Freeman to stop his truck within fifty feet and not less than ten feet of the crossing, and to not proceed until he could do so safely.

"Should you find that Fred Freeman violated any one of the three provisions of this statute and that such violation of the statute contributed as a proximate cause of his injury, then your verdict should be for the defendant."

The court also gave appellant's tendered instruction numbered 8 which reads as follows:

"It is provided by statute in the State of Indiana that whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty feet but not less than ten feet from the nearest track of said railroad, and shall not proceed until he can do so safely when:

'(a)   A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

'(c)   A railroad train, as defined in this Act, approaching within approximately one thousand five hundred feet of a highway crossing emits a signal audible for such distance, and such train, by reason of its speed or nearness to such crossing, is an immediate hazard.

'(d)   An approaching train is plainly visible and is in hazardous proximity to such crossing.'

"If you find from the evidence in this case that there was a clearly visible electric or mechanical signal device giving warning of an immediate approach of a train at the time and place where the

injuries to Fred Freeman were sustained, or if you find from the evidence in this case that defendant's railroad train was approaching within approximately fifteen hundred feet of the crossing where the accident to Fred Freeman occurred and emitted a signal audible for such distance, and such train, by reason of its speed or nearness to such crossing, was an immediate hazard, or if you find from the evidence in this case that the defendant's train was plainly visible to Fred Freeman and was in hazardous proximity to the crossing at which the accident to Fred Freeman occurred, I instruct you that it was the duty of Fred Freeman to stop the truck which he was driving within fifty feet of the crossing and not less than ten feet from the nearest track of defendant's railroad, and it was his further duty not to proceed until he could do so safely.

"I further instruct you that in ascertaining whether Fred Freeman could have proceeded safely onto and across the tracks under the circumstances as shown by the evidence, he was charged with the duty of exercising the reasonable care which an ordinarily prudent person would have exercised under the same or similar circumstances; in other words, if you find from all the evidence in this case that Fred Freeman stopped his truck within the distances required by the statute herein described, and if you further find that he exercised reasonable care before proceeding and in proceeding onto and across defendant's tracks, then I instruct you that Fred Freeman cannot be charged with any contributory negligence under the terms of this statute."

Appellant contends that these two instructions give conflicting interpretations of the same statute, and were thereby confusing to the jury.

We are unable to discover anything conflicting about these two instructions. The one tendered by appellee recites the statute, applies it to the facts of the case at hand, and charges the jury that its violation would constitute negligence. It is true that it uses the words of the statute. What can be erroneous about that?

The statute is the law. The courts merely interpret the statute; they do not change it. If the words of the statute are used the law is expressed. It is true that appellee had a right to have the statute interpreted and to tender an instruction for that purpose. This it did and the instruction was given. The jury was thereby told that under the conditions set forth in the statute the driver of a vehicle must stop within the designated distance and not proceed "until he can do so safely"; that a violation of the statute constitutes negligence; and that the phrase "until he can do so safely" means that he must exercise ordinary care.

The misconduct charged to one of appellee's counsel occurred during final argument. Appellee's counsel stated to the jury that the ordinance of the City of South Bend, prescribing an eight mile an hour speed limit for railroad trains within said city, was unreasonable and that in this day, when speed and transportation were important to modern business and to the war effort, trains should not be confined to such low rate of speed. Counsel for appellant objected to the remarks and asked the court to instruct the jury to disregard them. The court did not then so instruct the jury, but did caution appellee's counsel against making such remarks. Later in the same argument appellee's same counsel said to the jury that appellant's counsel had attacked the validity of a statute of the State of Indiana requiring operators of vehicles on a street to stop within fifty feet and not less than ten feet from the nearest track of a railroad crossing; that counsel for appellee was entirely justified in attacking the validity of an old speed ordinance of the City of South Bend which had been adopted back in the horse and buggy days; and that it was unreasonable to confine trains in this day and age to the speed of eight miles

an hour prescribed by said old ordinance. Appellant's counsel objected and the court then instructed the jury to disregard the remarks of counsel for the defendant on the subject of the unreasonableness of the South Bend speed ordinance. Also, as a part of its regular charge to the jury, the court gave the following instructions:

*Instruction No. 1*

"There was on the 11th day of March, 1940, in full force and effect in the City of South Bend, Indiana, an ordinance known as *Section 272 of Ordinance 966 of the City of South Bend, Indiana,* which provides:

" '43. *Regfiulating the Speed of Railroad Trains. Sec. 272.* No railroad company or person shall run or cause to be run any steam engine or locomotive with, or without train, or cars on any railroad within the limits of the City of South Bend, at a greater rate of speed than eight (8) miles per hour, and all engines and locomotives in motion within said limits shall signal such fact by ringing of the engine bell. Whoever, either individual or company, shall violate the provisions of this section, shall be fined in any sum not exceeding One Hundred Dollars ($100).'

"It was the duty of the defendant to operate its trains in compliance with the terms of this ordinance, and if you find from all the evidence in this case that the defendant was operating its train at the time Fred Freeman met his death in violation of the terms of this ordinance, I instruct you that the defendant is guilty of negligence as a matter of law.

*Instruction No. 2*

the terms of such ordinance, as long as it remains
"You are instructed that the ordinance of the City of South Bend which I have just read to you provides a speed limit for trains operating within the city limits of the City of South Bend, and that

in full force and effect, are binding upon all railroad companies operating trains through said city.

"I further instruct you that in your deliberations in this case, you are not entitled to ignore the provisions of that ordinance regardless of your own personal feelings as to its reasonableness or unreasonableness; in other words, the City Council of the City of South Bend is vested with the power to fix a maximum speed which it deems reasonable for the operations of trains through the city, and you are obliged in your deliberations to apply that maximum speed, as fixed in said ordinance, to the facts in this case.

"If you find that the defendant railroad company was at the time and place complained of in plaintiff's complaint exceeding the speed limit, as set forth in said ordinance, then I instruct you that the defendant railroad is guilty of negligence as a matter of law."

The court was not asked to withdraw submission.

The decision of a trial court on matters of alleged misconduct of counsel will not be disturbed unless it appears that the trial court has abused its discretion, and the complaining party has been harmed thereby. *King* v. *Ransburg* (1942), 111 Ind. App. 523, 39 N. E. (2d) 822.

Here the trial court not only did all that appellant requested it to do but it instructed the jury carefully and thoroughly that the unreasonableness of the ordinance being discussed was not before it and that the members of the jury were not entitled to ignore the provisions of the ordinance regardless of their own personal feelings as to its reasonableness or unreasonableness. It is not material that the court merely cautioned appellee's counsel the first time he brought the subject up in his argument, and did not instruct the jury to disregard his remarks. It was only a short time later and during the same argument

that the jury was so instructed and then but a short time later that the jury was further instructed as a part of the court's general charge.

We find no reversible error.

Judgment affirmed.

NOTE—Reported in 51 N. E. (2d) 375.